IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PARK LAWN CORPORATION,

    *Plaintiff,*

  v.

PLOTBOX INC.,

    *Defendant.*

No. 1:20-cv-01484-SB

---

Jody Barillare, John P. Bramble, Michael P. Jones, Nancy L. Patterson, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, Delaware.

    *Counsel for Plaintiff.*

Leslie B. Spoltore, Dove Burns, OBERMAYER, REBMANN, MAXWELL & HIPPEL LLP, Wilmington, Delaware.

    *Counsel for Defendant.*

---

**MEMORANDUM OPINION**

October 29, 2021

BIBAS, *Circuit Judge*, sitting by designation.

Competition makes for a healthy economy. It pushes companies to reduce prices and improve quality, lest a rival do so first. But competition is one thing, corporate espionage another. The latter crosses the line. Park Lawn says that a competitor encouraged its CEO to help it poach key employees and to disclose trade secrets. If true, the line was crossed, so Park Lawn's trade secrets, tortious interference, and fiduciary duty claims may proceed.

### I. BACKGROUND

Park Lawn Corporation is in the cemetery business. In 2018, it started to develop software to automate many tasks. Am. Compl., D.I. 10 ¶ 7. Park Lawn hoped to make a killing: not only would it cut its own costs, but it could also license the software to competitors. *Id.*

But Park Lawn had one grave problem: its CEO had been feeding information about the software to a competitor, PlotBox. *Id.* ¶ 31. At first, PlotBox tried to recruit the CEO. *Id.* ¶ 24. It invited him to "golf outings and other meetings." *Id.* ¶ 25. And soon after, says Park Lawn, the CEO began leaking information about Park Lawn's software, its unique features, and the strategy to license it. *Id.* ¶¶ 29–31.

There is more. Park Lawn says its CEO helped PlotBox try to poach its Chief Technology Officer, the man overseeing the software project. D.I. 10 ¶¶ 25–28. All this, even though the CEO had signed confidentiality, non-competition, and non-solicitation agreements. *Id.* ¶¶ 15–17.

These maneuvers might have gone unnoticed. But in October 2019, Park Lawn learned that the CEO had bought a condo with its money but without its approval. *Id.* ¶¶ 18–19. So it investigated the CEO, unearthing his dalliance with PlotBox. *Id.* ¶ 18. Then, Park Lawn fired him. Shortly after, the CEO became PlotBox's chair. *Id.* ¶ 33.

Displeased, Park Lawn sued PlotBox for 1) stealing its trade secrets, 2) interfering with the CEO's employment agreements; and 3) helping the CEO breach his fiduciary duty to Park Lawn. PlotBox has moved to dismiss.

I take every factual allegation in the complaint as true and ask if they plausibly state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). They do.

## II. THE TRADE-SECRET CLAIMS SURVIVE

The Defend Trade Secrets Act lets companies sue those who have "misappropriated" their "trade secrets." 18 U.S.C. § 1836(b)(1). PlotBox says it misappropriated nothing. And if it did, it says, nothing it got counts as a trade secret. I disagree, so I will let these claims proceed.

### A. Park Lawn alleges a misappropriation

Misappropriation involves transferring information. 18 U.S.C. § 1839(5). PlotBox says it did not misappropriate because the CEO never actually gave it any information. But Park Lawn's complaint says otherwise. It says that the CEO and PlotBox exchanged a series of compromising emails. D.I. 10 ¶ 25. They discussed Park Lawn's "status," "developments in 'death-tech,'" and the CEO's interest in becoming PlotBox's chair. *Id.* Days after being fired, adds Park Lawn, the CEO invited PlotBox executives to his Florida home to discuss the "Park Lawn Update" and a "Technical

3

Presentation." *Id.* ¶ 29. Park Lawn highlights an email in which PlotBox asks the CEO if "this is what" Park Lawn "was working on …?" *Id.* ¶ 30. Taken together, these accusations plausibly allege that the CEO disclosed *something*.

Next, PlotBox says that even if it did learn something from the CEO, it never knew that the CEO got that intel using "improper means" as required under the Act. 18 U.S.C. § 1839(5)–(6). But it should have known something was amiss. The CEO broke his promise to keep quiet. And breaking such a promise counts as "improper means." *Id.* § 1839(6)(A). True, PlotBox might never have read the CEO's confidentiality agreement. But how often does Ford rush to tell Toyota about its innovations? *Cf. Geness v. Admin. Off. of Pa. Courts*, 974 F.3d 263, 269 (3d Cir. 2020) ("reasonable inferences" must be drawn "in favor of the non-moving part[y]."). Since PlotBox had reason to know the CEO used improper means, this attack fails.

### B. Park Lawn alleges PlotBox acquired trade secrets

There is one arrow left in PlotBox's trade-secrets quiver. PlotBox says any information it got from the CEO did not count as a "trade secret" under the Act. 18 U.S.C. § 1839(3).

For information to be a trade secret, it must (and this does) check three boxes:

- The information must be of a certain type: "financial, business, … or technical." *Id.* This "includ[es] … plans, … designs, … [and] codes." *Id.*
- It must be something the owner has "taken reasonable measures" to keep secret. *Id.*
- And the information must be more valuable if secret. *Id.*

4

Park Lawn says that the CEO told PlotBox about the unique features of the software and its strategy for selling it to rivals. Information about software is "technical." *Id.*; *You Map, Inc. v. Snap Inc.*, 2021 U.S. Dist. LEXIS 139524, at *18–19 (D. Del. July 27, 2021). And information about how to market and sell it concerns "financial" or "business" plans. 18 U.S.C. § 1839(3); *See Franklin Interiors, Inc. v. Wesolosky*, 2020 U.S. Dist. LEXIS 249035, at *11–12 (W.D. Pa. Oct. 21, 2020). Check.

Park Lawn took reasonable measures to protect that information. It let only a few employees access the software, and only after entering usernames and passwords. D.I. 10 ¶ 41. To boot, Park Lawn demands that its employees sign confidentiality agreements. *Id.* Check.

Finally, the information at issue is valuable, in part, because it is secret. If you are developing revolutionary features for a search engine, Google is the last company you want to discover those features. Check. The information counts as a trade secret.

PlotBox disagrees. It says Park Lawn is too vague about the relevant information. But Park Lawn cannot be expected to describe the software in maximal detail. It is, after all, suing to keep it secret. Instead, Park Lawn need only give PlotBox notice so it knows "the boundaries within which the secret lies" and can prepare a defense. *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 906 (3d Cir. 2021) (quoting *Diodes, Inc. v. Franzen*, 67 Cal. Rptr. 19, 24 (Ct. App. 1968)). Park Lawn has, so these claims may proceed.

### III. THE TORTIOUS-INTERFERENCE CLAIMS SURVIVE

Park Lawn also sues PlotBox for intentionally interfering with three agreements: the confidentiality, non-solicitation, and non-competition provisions of the CEO's

5

employment contract. PlotBox denies those charges. But most of its arguments miss the mark.

### A. The non-compete

PlotBox says it could not have tortiously interfered with the non-compete because it is invalid. It is right. As it recognizes, the employment contract "shall be governed by" Canadian law. D.I. 10-2, Exh. B-1, § 11.10(a). And under Canadian law, the non-compete is unenforceable. *J.G. Collins Ins. Agencies Ltd v. Elsey*, [1978] 2 S.C.R. 916, ¶ 19 (Can.) (holding that non-competes are enforceable only in "exceptional cases"). So it is off the hook. After all, you can interfere with a void contract only as much as you can murder a ghost.

Park Lawn parries that it is not suing to enforce contractual duties. Rather, it is suing under Delaware *tort* law to enforce the duties everyone owes each other. *Gloucester Holding Corp. v. U.S. Tape & Sticky Prods., LLC*, 832 A.2d 116, 123–24 (Del. Ch. 2003). Even so, to sue for interference in Delaware, Park Lawn must allege that a contract exists. Whether one does is determined not by Delaware law, but by Canadian law. *See Hall v. Maritek Corp.*, 170 A.3d 149, 155–56 (Del. Super. Ct. 2017). And Canada says that non-competes are valid only in "exceptional" circumstances not present here. *H.L. Staebler Co. Ltd. v. Allan*, 2008 O.N.C.A. 576, ¶ 40 (Can. Ont.).

Since there is no valid non-compete with which one can tortiously interfere, I will dismiss this claim with prejudice. The tortious interference count survives, but it cannot rest on the non-compete.

### B. The other agreements

That leaves Park Lawn's claims about the non-solicitation and confidentiality agreements. To state a claim, Park Lawn needs to plausibly plead that the CEO broke some promise. But, PlotBox says the CEO never breached any agreements. I disagree.

Start with the non-solicitation agreement. The CEO promised he would not "solicit the employment … of any" Park Lawn employee with whom he dealt. D.I. 10-2, Ex. B-1, §7.1(d). Park Lawn alleges the CEO tried to nab Park Lawn's Chief Technology Officer. D.I. 10 ¶28. This is enough to plausibly plead breach. PlotBox fares no better with the confidentiality provision. The CEO promised not to "give … any of [Park Lawn's] confidential information," which includes, "all information related to projects and strategies, marketing and business development plans." *Id.* ¶15. Park Lawn claims that the CEO did exactly that. So it has plausibly pleaded breach.

PlotBox makes one last move. It says it could not have interfered with Park Lawn because the two companies are not competitors. True, PlotBox is a software company; Park Lawn, a cemetery one. But Delaware does not require that the defendant be a competitor. *See WaveDivision Holdings, LLC v. Highland Capital Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012). So this swing misses too.

Thus, the tortious interference claims may proceed, but Park Lawn must rest on the non-solicitation and confidentiality agreements, not the non-compete.

### IV. THE CLAIMS FOR AIDING BREACH OF FIDUCIARY DUTIES SURVIVE

Park Lawn says its CEO violated his fiduciary duties by trying to poach its technology expert. So it sues PlotBox for helping him.

PlotBox says it is not liable because the CEO never breached any fiduciary duty. True, the CEO failed to recruit Park Lawn's Chief Technology Officer. But the CEO hardly acted loyally by *trying*. So Park Lawn has adequately pleaded a breach.

Next PlotBox says it never knew that the CEO owed fiduciary duties to Park Lawn. But PlotBox knew it was dealing with a competitor's CEO—and CEOs have fiduciary duties. *Gantler v. Stephens*, 965 A.2d 695, 708–09 (Del. 2009). So it had "constructive knowledge" of such duties. *Firefighters' Pension Sys. v. Presidio, Inc.*, 251 A.3d 212, 275 (Del. Ch. 2021). This claim survives.

\* \* \* \* \*

Competitors may land punishing blows, just not low ones. Park Lawn plausibly pleads that PlotBox played dirty. So it fights on.